# Scope of Congressional Oversight and Investigative Power With Respect to the Executive Branch

Congressional power to conduct inquiries and to exercise oversight respecting the Executive Branch is broad and well-established. This power is not unlimited, however. Its use must be confined to inquiries concerning the administration of existing laws or the determination of whether new or additional laws are needed.

Congress may not conduct investigative or oversight inquiries for the purpose of managing Executive Branch agencies or for directing the manner in which the Executive Branch interprets and executes the laws.

The Supreme Court's decisions in *Buckley* v. *Valeo*, 424 U.S. 1 (1976) (per curiam), and *INS* v. *Chadha*, 462 U.S. 919 (1983), establish an area of executive authority in the interpretation and implementation of statutes. Congress may not take action, including action in furtherance of its inquiry and oversight powers, that interferes with that executive authority, except through the enactment of legislation in full compliance with constitutional requirements.

March 22, 1985

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This responds to your request for a brief discussion of the proper scope of Congress' power of inquiry and oversight with respect to the Executive Branch.

It is beyond dispute that Congress may conduct investigations in order to obtain facts pertinent to possible legislation and in order to evaluate the effectiveness of current laws.[1] This power to obtain information has long been viewed as an essential attribute of the power to legislate, and was so treated in the British Parliament and in the colonial legislatures in this country. *See McGrain* v. *Daugherty*, 273 U.S. 135, 161, 174–77 (1927); *see generally* Landis, *Constitutional Limitations on the Congressional Power of Investigation*, 40 Harv. L. Rev. 153 (1926). Although the Constitution does not explicitly grant any power of inquiry to Congress, Congress asserted such a right shortly after the adoption of the Constitution. In 1792, the House of Represen-

---

[1] In exercising its oversight function, Congress may also adopt by plenary legislation "report and wait" provisions requiring the Executive to report to Congress in advance of taking certain actions. *See, e.g., INS* v. *Chadha*, 462 U.S. 919, 935 n.9 (1983). Congress' power in this area is not unlimited. Legislation purporting to render inoperative the Executive's inherent constitutional powers, such as those related to the President's role as Commander-in-Chief, for a fixed period of time would raise issues decidedly different and more difficult to resolve than situations in which Congress legislates "waiting" periods with regard to the exercise of statutory power by the Executive. *See generally Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U.S. 579, 636–38 (1952) (Jackson, J. concurring).

tatives appointed a committee to investigate a military disaster and authorized that committee to send for necessary witnesses and documents. 3 Annals of Cong. 490–94 (1792). It is now settled that Congress' power to obtain information necessary to legislate is broad.

Thus, for example, in *Watkins v. United States*, 354 U.S. 178, 187 (1957), the Supreme Court stated:

> We start with several basic premises on which there is general agreement. The power of the Congress to conduct investigations is inherent in the legislative process. That power is broad. It encompasses inquiries concerning the administration of existing laws as well as proposed or possibly needed statutes. It includes surveys of defects in our social, economic or political system for the purpose of enabling Congress to remedy them. It comprehends probes into departments of the Federal Government to expose corruption, inefficiency or waste.

As the Court's statement in *Watkins* suggests, Congress' power of inquiry regarding possible legislation extends to investigations of how well current laws are being administered by the Executive Branch. In *McGrain v. Daugherty*, 273 U.S. at 161, the Court affirmed the power of a Senate committee charged with investigating the administration of the Department of Justice under a former Attorney General to compel the appearance of a witness.[2] Finding that the subject matter of the investigation was sufficiently related to the legislative function of lawmaking to make the investigation proper, the Court stated:

> Plainly the subject was one on which legislation could be had and would be materially aided by the information which the investigation was calculated to elicit. This becomes manifest when it is reflected that the functions of the Department of Justice, the powers and duties of the Attorney General and the duties of his assistants, are all subject to regulation by congressional legislation and that the department is maintained and its activities are carried on under such appropriations as in the judgment of Congress are needed from year to year.

*Id.* at 178.

Broad as it is, however, Congress' power of oversight and inquiry "is not unlimited." *Watkins v. United States*, 354 U.S. at 187. As the quotation from

---

[2] This investigation was prompted by allegations of misfeasance and nonfeasance in the Department of Justice under Harry M. Daugherty, who served as Attorney General from March 1921 until March 1924. The Senate appointed a committee of five senators charged with investigating, *inter alia*: (1) the Attorney General's alleged failure to "prosecute properly violators of the Sherman Antitrust Act and the Clayton Act;" (2) the Attorney General's alleged failure to arrest and prosecute certain named individuals "and their co-conspirators in defrauding the Government;" and (3) the activities of the Attorney General and his assistants "which could in any manner tend to impair their efficiency or influence as representatives of the Government of the United States." 273 U.S. at 152–53. As part of this investigation, the Committee subpoenaed Attorney General Daugherty's brother, who was the president of a certain bank.

*McGrain* v. *Daugherty* suggests, the power of inquiry must be exercised "in aid of the legislative function." 273 U.S. at 135. In this regard, the Supreme Court has explicitly recognized that congressional inquiries may not be used to arrogate to Congress functions allocated by the Constitution to another branch of government.[3]

In *Kilbourn* v. *Thompson*, 103 U.S. 168 (1881), a House committee was investigating the circumstances surrounding the bankruptcy of a company in which the United States had deposited funds, focusing particular attention on a private real estate pool that was a part of the financial structure. The Supreme Court found that the House had exceeded the limits of its authority in this investigation because the subject matter was in its nature clearly judicial and therefore one in respect to which no valid legislation could be enacted. *See also Watkins* v. *United States*, 354 U.S. at 187. Accordingly, "[l]acking the judicial power given to the Judiciary, [Congress] cannot inquire into matters that are exclusively the concern of the Judiciary. Neither can it supplant the Executive in what exclusively belongs to the Executive." *Barenblatt* v. *United States*, 360 U.S. 109, 112 (1927).[4]

In determining what functions fall within the Executive's exclusive domain, one must, of course, be sensitive to the Supreme Court's admonition that the Constitution does not contemplate "a complete division of authority between the three branches." *Nixon* v. *Administrator of Gen. Servs.*, 433 U.S. 425, 443 (1977). Rather, the Constitution "enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). Accordingly, there is undoubtedly a gray area in which the President's responsibility for managing the Executive Branch and Congress' power of oversight conflict, and where the respective rights and obligations of the President and Congress are unclear. Nonetheless, Congress' power of inquiry must not be permitted to negate the President's constitutional responsibility for managing and controlling affairs committed to the Executive Branch. *See Myers* v. *United States*, 272 U.S. 52, 135 (1926). Thus, although Congress constitutionally can investigate the manner in which the Executive Branch has executed existing law in order to determine whether further legislation is necessary, it cannot conduct such investigations for the purpose of facilitating an ability to exercise day-to-day control over the management of Executive Branch agencies, or otherwise to direct the manner in which existing laws are interpreted and executed.

Two recent Supreme Court decisions establish certain clear limits on Congress' power to involve itself in the administration of the Nation's laws. In *Buckley* v. *Valeo*, 424 U.S. 1, 126 (1976) (per curiam), the Court ruled that all

---

[3] The constitutionally based doctrine of executive privilege also limits Congress' ability to obtain information from the Executive Branch. *See, e.g., United States* v. *Nixon*, 418 U.S. 683 (1974).

[4] *Barenblatt* did not involve a dispute between Congress and the Executive. The *Barenblatt* Court upheld, against statutory and constitutional objections, the contempt conviction of a witness who refused to answer questions concerning his alleged associations with the Communist Party posed by a subcommittee of the House Committee on Un-American Activities, which was then investigating alleged Communist infiltration into education.

officials who "exercise significant authority pursuant to the laws of the United States" are "Officers of the United States," who must be appointed in accordance with the Appointments Clause, U.S. Const. art. II, § 2, cl. 2. The Court specifically held that the interpretation and implementation of a statute "represents the performance of a significant governmental duty exercised pursuant to a public law," and can be performed only by an "officer of the United States." *Id.* at 141. This principle underlies Justice White's observation:

> I know of no authority for the congressional appointment of its own agents to make binding rules and regulations necessary to or advisable for the administration and enforcement of a major statute where the President has participated either in the appointment of each of the administrators or in the fashioning of the rules and regulations which they propound.

*Buckley* v. *Valeo*, 424 U.S. at 281 (White, J., concurring in part and dissenting in part). *Buckley* recognizes that the Constitution precludes Congress from participating in Executive Branch functions through appointment of the persons who execute the laws.

In *INS* v. *Chadha*, the Court held that a related principle of the separation of powers doctrine establishes that when Congress has authorized executive departments to perform certain tasks, the rights and duties created by that authorization or by its execution may not be altered by the actions of a congressional committee or other agent or arm of Congress. Any measure that alters those rights and duties must be approved by each House of Congress and presented to the President. 462 U.S. at 951. Together, the principles of *Buckley* and *Chadha* establish an area of executive authority interpreting and implementing duly enacted statutes that cannot be displaced by the actions of Congress except through the legislative process of enacting legislation subject to the President's veto.

Thus, the oversight functions of a congressional committee must be evaluated in relation to the President's longstanding and pervasive responsibility over the management and control of affairs committed to the Executive Branch. *See Myers* v. *United States*, 272 U.S. at 135. The prerogatives and responsibilities of the President to exercise and protect his control over the Executive Branch are based on the fundamental principle that the President's performance of his constitutional duties must be free of certain types of interference from the coordinate branches of government. The "executive Power" is vested in the President, U.S. Const. art II, § 1, cl. 1, and he must "take Care that the Laws be faithfully executed," *id.* § 3. In order faithfully to fulfill these responsibilities, the President must be able to delegate the management and control of executive departments to subordinate officials in the knowledge that they will remain faithful to his commands. To the extent that a committee of Congress attempts to interfere with the President's right to make policy decisions and to manage the Executive Branch pursuant to statutory authorization, the Legislative Branch limits the ability of the President to perform his constitutional

function. Congress may do so, of course, but only in the manner authorized by the Constitution: plenary legislation presented to the President and subject to his veto power. It may not vest in its committees or its officers the power to supplant the President's executive functions, and may not do so under the guise of its investigative authority.

RALPH W. TARR
*Acting Assistant Attorney General*
*Office of Legal Counsel*